**Willard ALEXANDER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 25, 1955.

James A. Crumlin, Louisville, Louis P. McHenry, Hopkinsville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Justice.

The appellant, Willard Alexander, and Richard Burbridge were indicted jointly for the willful murder of Tommie McCluskey. At Alexander's separate trial he was convicted of voluntary manslaughter and his punishment was fixed at 10 years in prison. On this appeal he argues, among other things, that he was entitled to a directed verdict of acquittal at the close of the Commonwealth's evidence. A motion to that effect was made at that time. We have decided that Alexander was entitled to a directed verdict at the close of the Commonwealth's evidence; therefore, a discussion of the other alleged errors is not necessary.

The evidence for the Commonwealth discloses that Tommie McCluskey, the deceased, was a white man about 35 years of age. He left his home on Sunday, November 29, 1953, with a shotgun, to go hunting. His sister testified that he had approximately $100 on his person when he left home. When she got his billfold from the undertaker sometime later, it contained only $30 and a $9.00 check. After he left home, McCluskey came upon a group of Negro men, including Alexander and Burbridge, some of whom were gambling. McCluskey joined the group and did some drinking with them. While the group was thus engaged, another Negro man approached them and asked Alexander to take him to get his brother's car. Alexander agreed to do so and Burbridge and McCluskey asked if they might go along. Alexander consented, so the four men got in his truck and left the scene. Later Burbridge asked them to stop and pick up two pints of whiskey which he had hidden. The four consumed the whiskey and then proceeded on to the place where they were to get the car. Alexander, Burbridge and McCluskey decided to get some more whiskey and were seen together at several different places buying or attempting to buy whiskey and beer. The three were last seen together around 5:50 or 6:-00 p. m. (about dark). About an hour after dark, Alexander and Burbridge appeared in Burkesville looking for the police. They reported that McCluskey had been struck by a hit and run driver and was lying on a road out in the country. They said he was dead or mortally injured. A taxi driv-

er and a friend overheard this report and went to the scene where they found a number of other persons already. assembled. They saw McCluskey, who was unconscious, and bleeding from his mouth and nose. They put him into the taxicab and left the scene before the police officers and ambulance arrived. After a couple of stops in Burkesville, McCluskey was taken to the Glasgow Hospital where he remained unconscious until his death four days later. Burbridge accompanied McCluskey to the hospital and Alexander arrived shortly thereafter.

John Garner testified that he was visiting a Mrs. Scott, who lived near the scene of the tragedy, the night McCluskey was injured. He saw a truck pass just before it got dark. It stopped about 200 yards from Mrs. Scott's house and stayed 20 or 25 minutes. Garner said he left Mrs. Scott's residence about 30 minutes later with Byron Logston. As they were driving along the road he saw a man on the side of the road. They drove on to the next house and came back where he was lying; and in a few minutes the cab came and took him away. He said the sheriff, Alexander and Burbridge then arrived. He said also that Alexander and Burbridge told him a car had run over McCluskey; he examined the road at the scene and found nothing which would indicate that a car had skidded or struck an object at that place; and after the truck passed Mrs. Scott's house he saw no other car or truck going in either direction. Another person who lived near the road also stated that he saw no other vehicles on the road. However, it was established by the Commonwealth's own witnesses that it would have been necessary for the truck to return over the same road to get back to Burkesville. Lyndon Finley, who was also at the scene, heard either Alexander or Burbridge say he "would spend ten years before he would tell a damned thing."

Fred Wells, operator of a ferry boat at Neeley's Ferry, said he ferried Alexander's truck across the river near Burkesville during the afternoon and that he saw Burbridge and McCluskey in the truck. The three were drinking but they appeared to be on very friendly terms. Junior Hoots, a 14 year old boy, testified that sometime before McCluskey was found he heard sounds like "somebody fussing and fighting" on the highway in the general neighborhood of where McCluskey was found. However, he was unable to identify any of the persons.

It was shown that Alexander had made contradictory statements concerning his activities during the afternoon in question. However, the Commonwealth's witnesses testified that the reason he gave for making such contradictory statements was that he did not want to disclose the fact that he had bought alcoholic beverages in dry territory. Dr. W. H. Bryant, who treated McCluskey's injuries, said McCluskey was unconscious from the time he first saw him until his death. He said McCluskey's death was caused by hemorrhage of the brain, resulting from a blow on each side of his face under his cheek bones. He testified also that McCluskey had abrasions on his right elbow and that there were no other injuries on his body.

The Commonwealth attempted to show that robbery was the motive for the killing of McCluskey by Alexander and Burbridge. Its evidence showed that $70 was missing from McCluskey's billfold when it was obtained from the undertaker by his sister a day or so after his injury. We think this evidence failed to show that robbery was the motive, because $30 was still in his billfold, and a number of other persons had access to the money. Any one of them could have taken it as readily as Alexander or Burbridge, if it was stolen.

The Commonwealth also introduced in evidence a mirror arm, a metal rod 12 to 18 inches long, which was seen in Alexander's truck and later found at his house. The theory was that McCluskey had been struck with this metal rod. However, this was pure speculation, as there was no direct evidence that such was the case.

■■■ We are of the opinion that this evidence was insufficient to take the case to the jury and that Alexander was entitled to a directed verdict. We have written that

N

to sustain the charge of a criminal offense there must be proof of (1) the corpus delicti; and (2) proof that the accused committed the offense charged against him. Circumstantial evidence which is as consistent with the absence of a crime as it is with its perpetration, or which may be reconciled with the presumption of innocence, is not sufficient to prove corpus delicti. It is also the rule that circumstantial evidence which creates only a suspicion is insufficient to establish guilt. Witt v. Commonwealth, 305 Ky. 31, 202 S.W.2d 612; Fyffe v. Commonwealth, 301 Ky. 165, 190 S.W.2d 674; Denham v. Commonwealth, 239 Ky. 771, 40 S.W.2d 384; Roberson's New Kentucky Criminal Law & Procedure, Sections 1778 and 1779.

The evidence in this case fails to prove the corpus delicti and does no more than create a suspicion of Alexander's guilt. Therefore, he was entitled to a directed verdict at the close of the Commonwealth's evidence.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.